TEXAS EMPLOYERS' INS. ASS'N v.
DANIELS et al.

No. 14554.

Court of Civil Appeals of Texas. Dallas.

Feb. 6, 1953.

Rehearing Denied April 17, 1953.

Gordon R. Wynne, Wills Point, Ramey, Calhoun, Brelsford & Hull, Tyler, and Bur-

ford, Ryburn, Hincks & Ford, Dallas, for appellant.

White & Yarborough and W. E. Johnson, all of Dallas, for appellees.

YOUNG, Justice.

This is a compensation case, Art. 8306 et seq., Vernon's Ann.Civ.St., claimant obtaining a money award for 60% permanent partial disability to wife, Mabel Daniels, following a fall and accidental injury allegedly sustained by her the latter part of July 1948 while employed by insured, Morton Salt Company at Grand Saline. Appellees' formal notice to the employer and filing of claim with the Industrial Accident Board were long subsequent to the time prescribed by sec. 4a, Art. 8307, V.A.C.S., (30-day and six-months interval after occurrence on which claim is based). Appellant's motion for judgment non obstante veredicto challenging the state of the evidence in support of the jury issues and answers involving "good cause," was overruled; and the controversy on appeal relates solely to such element of plaintiffs' cause of action.

Facts material thereto are reflected in a summary of the jury issues and answers, viz.: (1) That Mrs. Daniels, for some time after the fall, thought that her injuries were not serious and would clear up; (2) continuing to think so up until the time she went to see Dr. Cozby; (3) Dr. Cozby told Mrs. Daniels that in his opinion her trouble was not due to her fall; (4) that she relied upon what Dr. Cozby had told her up to the time in Dallas when she was advised that she had a ruptured disc, to the extent that she refrained from filing claim for compensation with the Industrial Accident Board; (5) when advised in Dallas that she had a ruptured disc, Mrs. Daniels then made formal report thereof to Mr. Jacobs; (6) that the foregoing facts constitute good cause for not filing notice with Mr. Jacobs sooner than she did file the same; (7) that upon receipt of notice by Mr. Jacobs of her injury in July 1948, the Texas Employers' Insurance Association then contacted her, telling her she had nothing to worry about and that they would take care of the matter; (8) Mrs. Daniels and husband relied on such representations of the Insurance Company from the time they were made up to the time claim was actually filed with the Industrial Accident Board on March 8, 1950; (9) that the facts just above detailed constitute good cause for not filing claim until March 8, 1950; (10) that Dr. Cozby, within a period of six months from and after July 1948, told either the plaintiff J. A. Daniels or Mabel Daniels that her disability was not the result of a fall sustained during month of July '48.

Appellant's points of error complain in effect of the trial court's error in overruling its motion for judgment non obstante veredicto because of no evidence (or insufficient evidence) tending to show that Mabel Daniels had good cause for her failure to (a) give notice to her employer, Morton Salt Company, of injury within thirty days, or (b) for not filing claim for compensation with the Industrial Accident Board from the date of accident on which said claim is based until the time she actually filed the same. Art. 8307, 4a, provides in part that for good cause the Board (or court) may, in meritorious cases, waive a strict compliance with the limitations as to notice and filing of claim before the Board; the only contention here made being that the testimony taken most favorably in behalf of claimant was wholly insufficient in view of the rule of decision that if the claim be not filed within the six-months period, good cause must be shown from date of accident continuously until the date same was actually filed. In the same connection, the court's charge carried the following instruction: "'Good Cause' * * * is that kind of cause which would excuse the failure of a person of ordinary care and prudence to act under the same or similar circumstances." These claimed insufficiencies of proof are set off by appellant into four periods, viz.: Time from the latter part of July '48 to late December '48 or early January '49, when "Mrs. Daniels considered her injury to be trivial"; from date last mentioned to about June 1, '49 when disability was definitely diagnosed as a ruptured disc, probably resulting from a fall, Mrs. Daniels allegedly relying on Dr. Coz-

by's statements during such interval "that her condition was not the result of the accident she sustained in July"; from June 1, '49 to July 12, '49, questioning the validity of Mrs. Daniels' assertions "that she was physically unable to file her compensation claim"; and from July 12, '49 to March 8, 1950, the time during which Mrs. Daniels testified to a reliance "on representations of the defendant company's agents that she should not worry about her claim." This leads to a brief resume of testimony touching the periods thus stressed.

Mrs. Daniels, age 42 at time of trial, began an employment with the Morton Salt Company in 1942, same terminating in October 1948, occasioned by a fire at the plant. In July previously she sustained a fall while going down an iron incline during rainy weather, having been assisted to her feet by fellow-workmen. She testified to being "terribly shook up" by the mishap, with soreness in back, hips and leg; that she was preparing to go home at the time, walking on home, getting to work next morning with some difficulty, and reporting to George Knight, her foreman, about the fall. She continued to work, under the testimony, though having trouble in lower back,—no severe pains, but "just couldn't get around so well," not thinking the trouble serious; summing up her condition as to failure to make formal report of injury in the beginning by the answer: "I thought I was just sore from the fall, and would probably wear it out, and it wouldn't amount to anything." Others working along with Mrs. Daniels testified to her frequent complaints of back pains and legs hurting subsequent to the fall; of her moving around with a limp, but continuing to work; Mr. Daniels, husband, also testifying to her complaint of pains in left hip and leg, getting better with week-end of rest and staying off feet. Mrs. Daniels also stated in connection with her report of the fall next morning to Foreman Knight:

"Q. You made no report in writing at that time? A. No, I didn't.

"Q. And why didn't you? A. I didn't think I had any injury, I thought I was just sore from the fall.

"Q. You thought it was more or less trivial, is that right? A. Yes, I didn't realize I had an injury at that time.

"Q. Now this soreness, where was it? A. It was in my hip and back.

"Q. Now, how long did you continue to work there after the fall? A. I worked on until October."

In latter part of December '48 or early January '49, within six months of the injury, Mrs. Daniels, not having improved, went to Dr. Cozby, her personal physician (and plant doctor as well), for examination; being then advised that the fall had no connection with her trouble; diagnosing source of same as kidneys and rheumatism and prescribing therefor; both the Daniels testifying to a reliance on such advice. A more severe attack coming on in April '49 (attended by spasms in muscles of left leg), she was taken to the Cozby hospital, remaining two days, with X-rays, examination, and medical conclusion that source of trouble was other than the fall. No relief followed, Dr. Cozby recommending examination by Dr. Barnes, a Dallas orthopedist, where the case was diagnosed as a ruptured disc, probably a result of the happening back in July 1948. Mrs. Daniels was taken to Baylor Hospital, remaining some eleven days under observation and treatment; then, according to her statement, returning home, and as soon as able to do so, reported her condition on July 12, 1949 to Mr. Jacobs at the plant. In this connection, the Daniels and Dr. Nash, their medical witness, all stated that her disability was of the type that fluctuates from day to day, showing marked improvement after resting. Several days after date of July notice, a representative of appellant visited Mrs. Daniels, asking questions about the injury; returning two or three weeks later, asking permission to see her doctors, telling plaintiff "not to worry, that they (Dillard and Jacobs) would see my doctors and see about all of that for me, not to worry about a thing." According to her, she waited until January to see what they would do about taking care of the matter; then going to the plant, talking to Superintendent Bell, who "sent me back to the clinic for some more treatments, and I waited to see

how they would turn out, what Dr. Barnes would tell me, and then I—in March, I decided they wasn't going to do anything about it and that is when I seen you (referring to counsel who immediately filed claim with the Board).

As stated in Harkey v. Texas Employers' Insurance Ass'n, 146 Tex. 504, 208 S.W.2d 919, 921, there are several distinct factual bases for good cause under Art. 8307, sec. 4a, V.A.C.S.; the court going on to say: "Claimant's belief in good faith that his injuries are not serious is one, provided a reasonably prudent person in the same or similar circumstances would have delayed filing his claim. Texas Employers' Insurance Ass'n v. Clark, Tex. Civ.App., 23 S.W.2d 405, error dismissed. And while such belief continues, the fact that almost constant pain exists does not affect the issue; since pain and suffering are not compensable. Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S. W.2d 80. Advice from a physician that his injuries are not serious constitutes good cause for failure to file a claim within the prescribed time, provided the claimant, in the exercise of ordinary care, believes and relies upon that advice. Consolidated Underwriters v. Pruitt, Tex.Civ.App., 180 S. W.2d 461, er. ref., want of merit."

And concerning the grounds for further delay in giving notice and filing claim, it may be observed that each case involving good cause under the statute, turns on its own facts; for which reason, appellant's cited authorities are not regarded as controlling. There is no showing that insurer was in any wise prejudiced because of a failure to notify the Board within the prescribed time; Mr. Jacobs, who had to do with the Company insurance, telling claimant along with her July 12 notice of injury, that, from his books, same had already been reported to him. Hardly any one, on reading the narrative of Mrs. Daniels relative to the course of events that followed the accident of July 1948, can fail to be impressed with the sincerity and candor of this witness; and we are not prepared to say her testimony, in essential part, was without probative force. "* * if there is any evidence in the record to sustain the findings made by the jury or the trial court, the Court of Civil Appeals is not justified in substituting its findings of fact for the findings made by the trial court and the jury, and render final judgment thereon. First State Bank v. Metropolitan Casualty Ins. Co., 125 Tex. 113, 79 S.W.2d 835, 98 A.L.R. 1256, and cases cited." Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088, 1089.

All points of error must be accordingly overruled and judgment of the trial court affirmed.